IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| **DEBRA A. ZANDSTRA**<br><br>      Plaintiff,<br><br>  v.<br><br>**REBECCA H. FISCHER,**<br>**HORIZON BANK, N.A.,**<br><br>      Defendants, | Case No. 2:11-cv-359 |

### *MOTION TO REMAND*

COMES NOW, Horizon Bank, N.A., by counsel, and moves to remand the action formerly pending in the LaPorte Superior Court of Indiana, Cause No. 46D03-1101-CC-028 (the "LaPorte Action") and in support thereof states:

1.      On September 28, 2011 Debra A. Zandstra filed a Defendant's Notice of Removal in connection with the LaPorte Action.

2.      The LaPorte Action was filed on January 31, 2011.  A file-marked copy of the Complaint is attached hereto and incorporated herein as Exhibit "A".

3.      The Defendant Debra A. Zandstra was served with the Complaint on February 14, 2011, as shown by the summons, a copy of which is attached hereto and incorporated herein as Exhibit "B".

4.      Pursuant to 28 USC § 1446(b) the Notice of Removal of a Civil Action or Proceeding shall be filed within thirty (30) days after the receipt by the Defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based.

5. Since Debra A. Zandstra was served with the Complaint on February 14, 2011 and did not file the Notice of Removal until many months later, on September 28, 2011, the removal is untimely and the action should be remanded.

6. In addition, the action was not properly removed to federal court because the District Court would not have original jurisdiction of the action. There is no diversity of citizenship, since all of the parties are residents of the State of Indiana, and there is no federal question involved, inasmuch as the LaPorte Action seeks to recover a debt owed on a promissory note as a matter of contract law.

WHEREFORE, Horizon Bank, N.A., by counsel, respectfully request that the Court remand the LaPorte Action to the LaPorte Superior Court and for all other just and proper relief in the premises.

Respectfully submitted,

LADERER & FISCHER, P.C.
/s/ Rebecca H. Fischer
Rebecca Hoyt Fischer (10537-72)
112 West Jefferson Blvd., Ste. 310
South Bend, IN 46601
Telephone: (574) 284-2354
Facsimile: (574) 284-2356
Attorney for Defendants Rebecca H. Fischer
and Horizon Bank, N.A.

CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2011 I electronically filed with the Clerk of this Court the foregoing document using the CM/ECF system that sent notification of such filing to the following:

Debra Zandstra
124 Sylvan Drive
Valparaiso, IN  46385

/s/ Rebecca H. Fischer

| STATE OF INDIANA | ) | IN THE LAPORTE SUPERIOR COURT |
|---|---|---|
| | ) )SS: | |
| LAPORTE COUNTY | ) | CAUSE NO. 46D03-1101-CC-028 |

HORIZON BANK, N.A.

    Plaintiff,

v.

DEBRA A. ZANDSTRA,

    Defendant.

FILED IN CLERKS OFFICE
JAN 31 2011
LA PORTE SUPERIOR COURT NO. 3

## COMPLAINT ON PROMISSORY NOTE

Horizon Bank, N.A., ("Horizon") states the following claim for relief against the defendant:

1. Horizon is a national bank with its principal offices located in Michigan City, Indiana.

2. On or about March 9, 2005, Debra A. Zandstra ("Defendant") executed and delivered to Horizon a promissory note in the original principal amount of $106,000.00, a copy of which is attached hereto and made a part of this Complaint as Exhibit "A" (the "Note").

3. As of January 26, 2011, the total amount owing on the Note was principal of $102,515.52, accrued interest of $2,428.68 and late fees of $82.50. Interest continues to accrue after that date at the rate of $15.45 per diem.

4. Defendant is in default under the terms of the Note in that she has failed to make the payment due for October 2010 or any month thereafter.

WHEREFORE, Horizon requests that the Court enter judgment against Debra A. Zandstra in the amount of $105,026.70, together with accrued interest after January 26, 2011, plus Horizon's cost of collection, including reasonable attorney fees, the costs of this action and all other just and proper relief in the premises.

1

P:\Word Perfect Doc's\BANKS\HORIZON\ZANDSTRA, DEBRA\complaint.wpd



EXHIBIT A

*Rebecca H Fischer* (signature)

Rebecca Hoyt Fischer               10537-72
LADERER & FISCHER, P.C.
112 West Jefferson Blvd., Ste. 310
South Bend, IN 46601
Telephone: (574) 284-2354
Facsimile: (574) 284-2356

# HOME EQUITY LINE PLUS CREDIT AGREEMENT CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $106,000.00 | 03-09-2005 | 03-09-2015 | 8013 | 6 | 332 | KJK | |

References in the shaded area are for our use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Debra A. Zandstra (SSN
124 Sylvan Dr.
Valparaiso, IN 46385

**Lender:** HORIZON BANK, NATIONAL ASSOCIATION
VALPARAISO BRANCH (332)
515 FRANKLIN STREET
MICHIGAN CITY, IN 46360
(219) 462-8499

**CREDIT LIMIT: $106,000.00** **DATE OF AGREEMENT: March 9, 2005**

**Description of Existing Indebtedness.** An original note in the amount $106,000.00 dated March 9, 2005.

**Description of Change In Terms.** To change the note number from #4990008013 to #4990008606.

**Introduction.** This Home Equity Line Plus Credit Agreement ("Agreement") governs your line of credit (the "Credit Line" or the "Credit Line Account") issued through HORIZON BANK, NATIONAL ASSOCIATION. In this Agreement, the words "Borrower," "you," "your," and "Applicant" mean each and every person who signs this Agreement, including all Borrowers named above. The words "we," "us," "our," and "Lender" mean HORIZON BANK, NATIONAL ASSOCIATION. You agree to the following terms and conditions:

**Promise to Pay.** You promise to pay HORIZON BANK, NATIONAL ASSOCIATION, or order, the total of all credit advances and FINANCE CHARGES, together with all costs and expenses for which you are responsible under this Agreement or under the "Mortgage" which secures your Credit Line. You will pay your Credit Line according to the payment terms set forth below. If there is more than one Borrower, each is jointly and severally liable on this Agreement. This means we can require any Borrower to pay all amounts due under this Agreement, including credit advances made to any Borrower. Each Borrower authorizes any other Borrower, on his or her signature alone, to cancel the Credit Line, to request and receive credit advances, and to do all other things necessary to carry out the terms of this Agreement. We can release any Borrower from responsibility under this Agreement, and the others will remain responsible.

**Term.** The term of your Credit Line will begin as of the date of this Agreement ("Opening Date") and will continue until March 9, 2015 ("Maturity Date"). All indebtedness under this Agreement, if not already paid pursuant to the payment provisions below, will be due and payable upon maturity. The draw period of your Credit Line will begin on a date, after the Opening Date, when the Agreement is accepted by us in the State of Indiana, following the expiration of the right to cancel, the perfection of the Mortgage, the receipt of all required certificates of noncancellation, and the meeting of all of our other conditions and will continue as follows: Ten years. You may obtain credit advances during this period ("Draw Period"). You agree that we may renew or extend the period during which you may obtain credit advances or make payments. You further agree that we may renew or extend your Credit Line Account.

**Minimum Payment.** Your "Regular Payment" will equal the amount of your accrued FINANCE CHARGES. You will make 119 of these payments. You will then be required to pay the entire balance owing in a single balloon payment. If you make only the minimum payments, you may not repay any of the principal balance by the end of this payment stream. Your payments will be due monthly. Your "Minimum Payment" will be the Regular Payment, plus any amount due and all other charges. An increase in the ANNUAL PERCENTAGE RATE may increase the amount of your Regular Payment. You agree to pay not less than the Minimum Payment on or before the due date indicated on your periodic billing statement.

**How Your Payments Are Applied.** Unless otherwise agreed or required by applicable law, payments and other credits will be applied first to late charges and other charges; then to any voluntary credit life and disability insurance premiums; then to Finance Charges; and then to unpaid principal.

**Receipt of Payments.** All payments must be made by a check, automatic account debit, electronic funds transfer, money order, or other instrument in U.S. dollars and must be received by us at the remittance address shown on your periodic billing statement. Payments received at that address on any business day will be credited to your Credit Line as of the date received.

**Credit Limit.** This Agreement covers a revolving line of credit for the principal amount of One Hundred Six Thousand & 00/100 Dollars ($106,000.00), which will be your "Credit Limit" under this Agreement. During the Draw Period we will honor your request for credit advances subject to the section below on Lender's Rights. You may borrow against the Credit Line, repay any portion of the amount borrowed, and re-borrow up to the amount of the Credit Limit. Your Credit Limit is the maximum amount you may have outstanding at any one time. You agree not to attempt, request, or obtain a credit advance that will make your Credit Line Account balance exceed your Credit Limit. Your Credit Limit will not be increased should you overdraw your Credit Line Account. If you exceed your Credit Limit, you agree to repay immediately the amount by which your Credit Line Account exceeds your Credit Limit, even if we have not yet billed you. Any credit advances in excess of your Credit Limit will not be secured by the Mortgage covering your principal dwelling.

**Charges to your Credit Line.** We may charge your Credit Line to pay other fees and costs that you are obligated to pay under this Agreement, the Mortgage or any other document related to your Credit Line. In addition, we may charge your Credit Line for funds required for continuing insurance coverage as described in the paragraph titled "Insurance" below or as described in the Mortgage for this transaction. We may also, at our option, charge your Credit Line to pay any costs or expenses to protect or perfect our security interest in your principal dwelling. These costs or expenses include, without limitation, payments to cure defaults under any existing liens on your principal dwelling. If you do not pay your property taxes, we may charge your Credit Line and pay the delinquent taxes. Any amount so charged to your Credit Line will be a credit advance and will decrease the funds available, if any, under the Credit Line. However, we have no obligation to provide any of the credit advances referred to in this paragraph.

**Credit Advances.** After the Effective Disbursement Date of this Agreement, you may obtain credit advances under your Credit Line as follows:

**Credit Line Checks.** Writing a preprinted "Home Equity Line Plus Check" that we will supply to you.

**Telephone Request.** Requesting a credit advance from your Credit Line to be applied to your designated account by telephone. Except for transactions covered by the federal Electronic Fund Transfers Act and unless otherwise agreed in your deposit account agreement, you acknowledge and you agree that we do not accept responsibility for the authenticity of telephone instructions and that we will not be liable for any loss, expense, or cost arising out of any telephone request, including any fraudulent or unauthorized telephone request, when acting upon such instructions believed to be genuine.

**Overdrafts.** Writing a check on your designated checking account with us in excess of the available collected balance in the account.

**Requests By Mail.** Requesting an advance by mail.

**Requests In Person.** Requesting a credit advance in person at any of our authorized locations.

If there is more than one person authorized to use this Credit Line Account, you agree not to give us conflicting instructions, such as one Borrower telling us not to give advances to the other.

**Limitations on the Use of Checks.** We reserve the right not to honor Home Equity Line Plus Checks in the following circumstances:

**Credit Limit Violation.** Your Credit Limit has been or would be exceeded by paying the Home Equity Line Plus Check.

**Post-dated Checks.** Your Home Equity Line Plus Check is post-dated. If a post-dated Home Equity Line Plus Check is paid and as a result any other check is returned or not paid, we are not responsible.

**Stolen Checks.** Your Home Equity Line Plus Checks have been reported lost or stolen.

**Unauthorized Signatures.** Your Home Equity Line Plus Check is not signed by an "Authorized Signer" as defined below.

**Termination or Suspension.** Your Credit Line has been terminated or suspended as provided in this Agreement or could be if we paid the Home Equity Line Plus Check.

If we pay any Home Equity Line Plus Check under these conditions, you must repay us, subject to applicable laws, for the amount of the Home Equity Line Plus Check. The Home Equity Line Plus Check itself will be evidence of your debt to us together with this Agreement. Our liability, if any, for wrongful dishonor of a check is limited to your actual damages. Dishonor for any reason as provided in this Agreement is not wrongful dishonor. We may choose not to return Home Equity Line Plus Checks along with your periodic billing statements; however, your use of each Home Equity Line Plus Check will be reflected on your periodic statement as a credit advance. We do not "certify" Home Equity Line Plus Checks drawn on your Credit Line.

**Transaction Requirements.** The following transaction limitations will apply to the use of your Credit Line:

EXHIBIT A

Credit Line Home Equity Line Plus Check, Telephone Request, Overdraft, Request By Mail and In Person Request Limitations. The following transaction limitations will apply to your Credit Line and the writing of Home Equity Line Plus Checks, requesting an advance by telephone, writing a check in excess of your checking account balance, requesting an advance by mail and requesting an advance in person.

Minimum Advance Amount. The minimum amount of any credit advance that can be made on your Credit Line is $250.00. This means any Home Equity Line Plus Check must be written for at least the minimum advance amount.

Authorized Signers. The words "Authorized Signer" on Home Equity Line Plus Checks as used in this Agreement mean and include each person who (a) signs the application for this Credit Line, (b) signs this Agreement, or (c) has executed a separate signature authorization card for the Credit Line Account.

Lost Home Equity Line Plus Checks. If you lose your Home Equity Line Plus Checks or if someone is using them without your permission, you agree to let us know immediately. The fastest way to notify us is by calling us at (219) 873-2640. You also can notify us at Horizon Bank N.A. 515 Franklin Square, Michigan City, IN 46360.

Future Credit Line Services. Your application for this Credit Line also serves as a request to receive any new services (such as access devices) which may be available at some future time as one of our services in connection with this Credit Line. You understand that this request is voluntary and that you may refuse any of these new services at the time they are offered. You further understand that the terms and conditions of this Agreement will govern any transactions made pursuant to any of these new services.

Collateral. You acknowledge this Agreement is secured by a real estate mortgage on property located at 124 Sylvan Drive, Valparaiso, IN.

Insurance. You must obtain insurance on the Property securing this Agreement that is reasonably satisfactory to us. You may obtain property insurance through any company of your choice that is reasonably satisfactory to us. You have the option of providing any insurance required under this Agreement through an existing policy or a policy independently obtained and paid for by you, subject to our right, for reasonable cause before credit is extended, to decline any insurance provided by you. Subject to applicable law, if you fail to obtain or maintain insurance as required in the Mortgage, we may purchase insurance to protect our own interest, add the premium to your balance, pursue any other remedies available to us, or do any one or more of these things.

Right of Setoff. To the extent permitted by applicable law, we reserve a right of setoff in all your accounts with us (whether checking, savings, or some other account), including without limitation, all accounts you may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. You authorize us, to the extent permitted by applicable law, to charge or setoff all sums owing on this Agreement against any and all such accounts.

Periodic Statements. If you have a balance owing on your Credit Line Account or have any account activity, we will send you a periodic statement. It will show, among other things, credit advances, FINANCE CHARGES, other charges, payments made, other credits, your "Previous Balance," and your "New Balance." Your statement also will identify the Minimum Payment you must make for that billing period and the date it is due.

When FINANCE CHARGES Begin to Accrue. Periodic FINANCE CHARGES for credit advances under your Credit Line will begin to accrue on the date credit advances are posted to your Credit Line. There is no "free ride period" which would allow you to avoid a FINANCE CHARGE on your Credit Line credit advances.

Method Used to Determine the Balance on Which the FINANCE CHARGE Will Be Computed. A daily FINANCE CHARGE will be imposed on all credit advances made under your Credit Line imposed from the date of each credit advance based on the "average daily balance" method. To get the average daily balance, we take the beginning balance of your Credit Line Account each day, add any new advances and subtract any payments or credits and any unpaid FINANCE CHARGES. This gives us a daily balance. Then, we add up all the daily balances for the billing cycle and divide the total by the number of days in the billing cycle. This gives us the "average daily balance."

Method of Determining the Amount of FINANCE CHARGE. Any FINANCE CHARGE is determined by applying the "Periodic Rate" to the balance described herein. Then we multiply by the number of days in the billing cycle. This is your FINANCE CHARGE calculated by applying a Periodic Rate.

You also agree to pay FINANCE CHARGES, not calculated by applying a Periodic Rate, as set forth below:

Additional Finance Charges. The following additional FINANCE CHARGES will be charged to your Credit Line or paid in cash:

Interest due 1/14/06 for loan #4990008013: In Cash $721.85

Periodic Rate and Corresponding ANNUAL PERCENTAGE RATE. We will determine the Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE as follows. Initially, we will apply the discounted rates shown herein. Thereafter, we start with an Independent index which is the The highest rate on corporate loans posted by at least 75% of the USA's 30 largest banks known as The Wall Street Journal Prime Rate and is published in The Wall Street Journal, (the "index"). We will use the most recent Index value available to us as of the date of any ANNUAL PERCENTAGE RATE adjustment. The Index is not necessarily the lowest rate charged by us on our loans. If the Index becomes unavailable during the term of this Credit Line Account, we may designate a substitute index after notice to you. To determine the Periodic Rate that will apply to your account, we add a margin to the value of the Index, then divide the value by the number of days in a year (daily). To obtain the ANNUAL PERCENTAGE RATE we multiply the Periodic Rate by the number of days in a year (daily). This result is the ANNUAL PERCENTAGE RATE. The ANNUAL PERCENTAGE RATE includes only interest and no other costs.

The Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE on your Credit Line will increase or decrease as the Index increases or decreases from time to time. Adjustments to the Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE resulting from changes in the Index will take effect monthly and any change in the ANNUAL PERCENTAGE RATE and the Periodic Rate will take effect on the first day of the month based on the Index rate ten business days prior to the effective rate change date. In no event will the corresponding ANNUAL PERCENTAGE RATE be less than 5.500% per annum or more than the lesser of 21.000% or the maximum rate allowed by applicable law. Today the Index is 7.250% per annum, and therefore the initial Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE on your Credit Line are as stated below:

Rates During the Discount Period

| Term of Discount Range of Balances | Discounted Rate | ANNUAL PERCENTAGE RATE | Daily Periodic Rate |
|---|---|---|---|
| First 3 payments | | | |
| All Balances | 3.750% | 5.500% | 0.01507% |

The term of the discount period is 3 payments.

Current Non-discounted Rates for the First Payment Stream

| Range of Balance or Conditions | Margin Added to Index | ANNUAL PERCENTAGE RATE | Daily Periodic Rate |
|---|---|---|---|
| All Balances | 1.000% | 8.250% | 0.02260% |

Notwithstanding any other provision of this Agreement, we will not charge interest on any undisbursed loan proceeds, except as may be permitted during any Right of Rescission period.

Conditions Under Which Other Charges May Be Imposed. You agree to pay all the other fees and charges related to your Credit Line as set forth below:

Annual Fee. A nonrefundable Annual Fee of $50.00 will be charged to your Credit Line at the following time: Annually.

Returned Items. You may be charged $25.00 if you pay your Credit Line obligations with a check, draft, or other item that is dishonored for any reason, unless applicable law requires a lower charge or prohibits any charge.

Fee to Stop Payment. Your Credit Line Account may be charged $27.00 when you request a stop payment on your account.

Late Charge. Your payment will be late if it is not received by us within 10 days after the "Payment Due Date" shown on your periodic statement. If your payment is late we may charge you $16.50.

Lender's Rights. Under this Agreement, we have the following rights:

Termination and Acceleration. We can terminate your Credit Line Account and require you to pay us the entire outstanding balance in one

payment, and charge you certain fees, if any of the following happen: (1) You commit fraud or make a material misrepresentation at any time in connection with this Credit Agreement. This can include, for example, a false statement about your income, assets, liabilities, or any other aspects of your financial condition. (2) You do not meet the repayment terms of this Credit Agreement. (3) Your action or inaction adversely affects the collateral for the plan or our rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the dwelling, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the dwelling, creation of a senior lien on the dwelling without our permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes.

Suspension or Reduction. In addition to any other rights we may have, we can suspend additional extensions of credit or reduce your Credit Limit during any period in which any of the following are in effect:

(1) The value of your property declines significantly below the property's appraised value for purposes of this Credit Line Account. This includes, for example, a decline such that the initial difference between the Credit Limit and the available equity is reduced by fifty percent and may include a smaller decline depending on the individual circumstances.

(2) We reasonably believe that you will be unable to fulfill your payment obligations under your Credit Line Account due to a material change in your financial circumstances.

(3) You are in default under any material obligations of this Credit Line Account. We consider all of your obligations to be material. Categories of material obligations include the events described above under Termination and Acceleration, obligations to pay fees and charges, obligations and limitations on the receipt of credit advances, obligations concerning maintenance or use of the property or proceeds, obligations to pay and perform the terms of any other deed of trust, mortgage or lease of the property, obligations to notify us and to provide documents or information to us (such as updated financial information), obligations to comply with applicable laws (such as zoning restrictions), and obligations of any comaker. No default will occur until we mail or deliver a notice of default to you, so you can restore your right to credit advances.

(4) We are precluded by government action from imposing the ANNUAL PERCENTAGE RATE provided for under this Agreement.

(5) The priority of our security interest is adversely affected by government action to the extent that the value of the security interest is less than one hundred twenty percent (120%) of the Credit Limit.

(6) We have been notified by governmental authority that continued advances may constitute an unsafe and unsound business practice.

Change in Terms. We may make changes to the terms of this Agreement if you agree to the change in writing at that time, If the change will unequivocally benefit you throughout the remainder of your Credit Line Account, or if the change is insignificant (such as changes relating to our data processing systems). If the Index is no longer available, we will choose a new index and margin. The new index will have an historical movement substantially similar to the original Index, and the new index and margin will result in an ANNUAL PERCENTAGE RATE that is substantially similar to the rate in effect at the time the original index becomes unavailable. We may prohibit additional extensions of credit or reduce your Credit Limit during any period in which the maximum ANNUAL PERCENTAGE RATE under your Credit Line Account is reached.

Collection Costs. We may hire or pay someone else to help collect this Agreement if you do not pay. You will pay us that amount. This includes, subject to any limits under the Indiana Uniform Consumer Credit Code, our reasonable attorneys' fees and our legal expenses, whether or not there is a lawsuit, including without limitation all reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. However, you only will pay reasonable attorneys' fees of an attorney not our salaried employee, to whom the matter is referred after your default. If not prohibited by applicable law, you also will pay any court costs, in addition to all other sums provided by law.

Access Devices. If your Credit Line is suspended or terminated, you must immediately return to us all Home Equity Line Plus Checks and any other access devices. Any use of Home Equity Line Plus Checks or other access devices following suspension or termination may be considered fraudulent. You will also remain liable for any further use of Home Equity Line Plus Checks or other Credit Line access devices not returned to us.

Delay in Enforcement. We may delay or waive the enforcement of any of our rights under this Agreement without losing that right or any other right. If we delay or waive any of our rights, we may enforce that right at any time in the future without advance notice. For example, not terminating your account for non-payment will not be a waiver of our right to terminate your account in the future if you have not paid.

Cancellation by you. If you cancel your right to credit advances under this Agreement, you must notify us and return all Home Equity Line Plus Checks and any other access devices to us. Despite cancellation, your obligations under this Agreement will remain in full force and effect until you have paid us all amounts due under this Agreement.

Prepayment. You may prepay all or any amount owing under this Credit Line at any time without penalty, except we will be entitled to receive all accrued FINANCE CHARGES, and other charges, if any. Payments in excess of your Minimum Payment will not relieve you of your obligation to continue to make your Minimum Payments. Instead, they will reduce the principal balance owed on the Credit Line. You agree not to send us payments marked "paid in full", "without recourse", or similar language. If you send such a payment, we may accept it without losing any of our rights under this Agreement, and you will remain obligated to pay any further amount owed to us. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: HORIZON BANK, NATIONAL ASSOCIATION; VALPARAISO BRANCH (332); 515 FRANKLIN STREET; MICHIGAN CITY, IN 46360.

Notices. All notices will be sent to your address as shown in this Agreement. Notices will be mailed to you at a different address if you give us written notice of a different address. You agree to advise us promptly if you change your mailing address.

Annual Review. You agree that you will provide us with a current financial statement, a new credit application, or both, annually, on forms provided by us. Based upon this information we will conduct an annual review of your Credit Line Account. You also agree we may obtain credit reports on you at any time, at our sole option and expense, for any reason, including but not limited to determining whether there has been an adverse change in your financial condition. We may require a new appraisal of the Property which secures your Credit Line at any time, including an internal inspection, at our sole option and expense. You authorize us to release information about you to third parties as described in our privacy policy and our Fair Credit Reporting Act notice, provided you did not opt out of the applicable policy, or as permitted by law.

Transfer or Assignment. Without prior notice or approval from you, we reserve the right to sell or transfer your Credit Line Account and our rights and obligations under this Agreement to another lender, entity, or person, and to assign our rights under the Mortgage. Your rights under this Agreement belong to you only and may not be transferred or assigned. Your obligations, however, are binding on your heirs and legal representatives. Upon any such sale or transfer, we will have no further obligation to provide you with credit advances or to perform any other obligation under this Agreement.

Tax Consequences. You understand that neither we, nor any of our employees or agents, make any representation or warranty whatsoever concerning the tax consequences of your establishing and using your Credit Line, including the deductibility of interest, and that neither we nor our employees or agents will be liable in the event interest on your Credit Line is not deductible. You should consult your own tax advisor for guidance on this subject.

Notify Us of Inaccurate Information We Report To Consumer Reporting Agencies. Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: HORIZON BANK N.A. 502 Franklin Square Michigan City, IN 46360.

Jury Waiver. We and you hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either us or you against the other.

LATE CHARGE ADJUSTMENT:. The late charge described above is subject to change as provided in IC 24-4.5-1-106.

Notice of Cancellation:. Borrower or Lender may cancel the Authorization to Debit Account for Payment at any time by delivering a written note to the other party. In the event Borrower desires to cancel this Authorization, Borrower shall provide Lender with a written notice at least 5 days prior to the next scheduled payment date.

PROCESSING LOAN ADVANCES FOR OVERDRAFT PROTECTION. Loan advances shall be Deposited into account number (          ) in increments of $250.00.

Termination Fee:. $250 (due if account is closed within the first 24 months of note date).

Daily Periodic Rate. Daily periodic rate of .0102739726 and 3.75% APR are initial rates and will be in effect for three months from the date of this agreement. They are not based on the relationship used for later rate adjustments.

Billing:. Borrower shall be billed the 13th of each month. Payment will be due 25 days later.

Governing Law. This Agreement will be governed by federal law applicable to us and, to the extent not preempted by federal law, the laws of

the State of Indiana without regard to its conflicts of law provisions. This Agreement has been accepted by us in the State of Indiana.

Choice of Venue. If there is a lawsuit, you agree upon our request to submit to the jurisdiction of the courts of LAPORTE County, State of Indiana.

Caption Headings. Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

Interpretation. You agree that this Agreement, together with the Mortgage, is the best evidence of your agreements with us. If we go to court for any reason, we can use a copy, filmed or electronic, of any periodic statement, this Agreement, the Mortgage or any other document to prove what you owe us or that a transaction has taken place. The copy, microfilm, microfiche, or optical image will have the same validity as the original. You agree that, except to the extent you can show there is a billing error, your most current periodic statement is the best evidence of your obligation to pay.

Severability. If a court finds that any provision of this Agreement is not valid or should not be enforced, that fact by itself will not mean that the rest of this Agreement will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Agreement even if a provision of this Agreement may be found to be invalid or unenforceable.

Continuing Validity. Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by us to this Agreement does not waive our right to strict performance of the obligation(s) as changed, nor obligate us to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of us to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by us in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to us that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

Acknowledgment. You understand and agree to the terms and conditions in this Agreement. By signing this Agreement, you acknowledge that you have read this Agreement.

BORROWER:

X _____
(Debra A. Zandstra)

# SUMMONS

| | | |
|---|---|---|
| STATE OF INDIANA ) | | IN THE LAPORTE SUPERIOR COURT |
| )SS: | | |
| LAPORTE COUNTY ) | | CAUSE NO. 46D03-11___-CC-_____ |

*David E. Lain*

Plaintiff - Names and Addresses

46D03   1101 CC 028

HORIZON BANK, N.A.,

**Left In Door / Copy Mailed**
Date: 2/7/11  Time: 1337 hrs
By: Sgt. Bud Hagen #12

vs.

F I L E D
IN CLERK'S OFFICE
JAN 31 2011
LA PORTE SUPERIOR COURT NO. 3

Defendant - Names and Addresses

Debra A. Zandstra
124 Sylvan Drive
Valparaiso, IN 46385

TO THE ABOVE NAMED DEFENDANT OR DEFENDANTS:

You have been sued by the person(s) named "plaintiff" in the court stated above.

The nature of the suit against you is stated in the complaint which is attached to this summons. It also states the demand which the plaintiff has made and wants from you.

You must answer the complaint in writing, by you or your attorney, within twenty (20) days commencing the day after you receive this summons, (you have twenty-three (23) days to answer if this summons was received by mail), or judgment will be entered against you for what the plaintiff has demanded.

If you have a claim for relief against the plaintiff arising from the same transaction or occurrence, you must assert it in your written answer.

CLERK'S ISSUANCE

Date Feb. 01, 2011

By _____ Clerk
                         Deputy

The following manner of service is hereby designated:   ☐ Registered Mail    ☐ Certified mail
☒ By Sheriff as provided by law    ☐ Other, as follows:

_____

(If by mail, stamped addressed envelope with return receipt attached to be furnished by the attorney.)

ATTORNEY FOR PLAINTIFF

Rebecca Hoyt Fischer, 112 West Jefferson Blvd., Suite 310, South Bend, IN 46601 (574) 284-2354
Name                    Address                         Phone No.

## ACKNOWLEDGMENT OF SERVICE OF SUMMONS

A copy of the above summons and a copy of the complaint attached thereto was received by me at

this _____ day of _____, 201_

RECEIVED
FEB 07 2011
DAVID E. LAIN
SHERIFF OF PORTER COUNTY

_____
Signature of Defendant

F I L E D
IN CLERK'S OFFICE
FEB 14 2011
LA PORTE SUPERIOR COURT NO. 3

EXHIBIT B